UNITED STATES DISTRICT
COURT WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                                        PLAINTIFF

v.                                                        CRIMINAL ACTION NO. 3:13-CR-117-CRS

JAMES R. WOODS                                                                  DEFENDANT

### MEMORANDUM OPINION AND ORDER

This matter is before the Court for consideration of a motion of the defendant, James R. Woods, for compassionate release due to fear of serious illness or death from the COVID-19 virus. DNs 44; 46. The United States has objected. DN 48.[1] The United States has also provided Woods' medical records for the last year under seal. DNs 49, 50. Woods has filed a reply. The matter is now ripe for decision.

On March 18, 2021, Acting Warden Wade K. Thompson received a request for compassionate relief from Woods. DN 44-2. The Warden responded six days later on March 24, 2021 and denied his request. *Id.* The Warden noted that his request to be considered for compassionate release was based on risk of contracting COVID-19 and found that Woods did not meet the requirements of Program Statement 5050.50 for compassionate release. *Id.* Though he urges that he appealed the denial of his request, there is no documentation in the record that supports this statement.

---

[1] The United States has filed a motion for leave to file its response out-of-time. DN 47. No objection has been filed to the motion. The motion will be granted.

Woods filed the present motion for compassionate release on April 19, 2021, thirty days after he filed his motion with the warden. Despite the fact that Woods's appears to have failed to appeal the timely denial of his request, the United States has conceded that Woods exhausted administrative remedies. DN 43, p. 3. The United States objects to the motion on the merits.

The World Health Organization declared the novel coronavirus known as COVID-19 a pandemic on March 11, 2020.[2] The President of the United States declared a national emergency on March 13, 2020 and the Governor of the Commonwealth of Kentucky declared a state of emergency even earlier, after the first confirmed case of COVID-19 on March 6, 2020.[3] As of the date of this writing, there are 178,503,429 confirmed cases worldwide and 3,872,457 deaths; in the United States, there are 33,190,195 confirmed cases and 596,003 deaths.[4] Further elaboration concerning the seriousness of the COVID-19 pandemic is unnecessary. The health risks associated with COVID-19, especially for those individuals confined to nursing homes or incarcerated in jails and prisons where outbreaks can yield catastrophic results, are apparent. However, the developments in the fight against the coronavirus are rapidly evolving worldwide and we must address each inmate's situation individually in the context currently presented when considering requests for compassionate release. Suffice it to say that the Court addresses motions for compassionate release, and Woods' motion in particular here, with the gravity of the situation in mind.

---

[2] *See* Tedros Adhanom Ghebreyesus, Director-General, World Health Organization, Opening Remarks at the Media Briefing on COVID-19 (March 11, 2020) (transcript available at https://www.who.int/dg/speeches/detail/who- director-general-s-openingremarks-at- the-media-briefing-on-covid-19--11-march-2020).

[3] *See* President Donald J. Trump's Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak (March 13, 2020), *available at* https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel- coronavirus-disease-covid-19-outbreak/; Governor Andy Beshear confirms first case of COVID-19 in the Commonwealth and declares a state of emergency (March 6, 2020), *available at* https://chfs.ky.gov/pages/search.aspx?affiliateId=CHFS&terms=declaration of state of emergency.

[4] *See* Coronavirus Disease (COVID-19) Situation Dashboard, World Health Organization, https://covid19.who.int/ (last visited June 22, 2021).

Woods is serving a 140-month prison sentence after pleading guilty in 2014 to possessing with intent to distribute 981 grams of cocaine. DN 22. His prior criminal history yielded a criminal history score of 13, placing him in a Criminal History Category VI under the Guidelines calculation. He was sentenced in accordance with a plea agreement in which the United States recommended the 140-month sentence, agreed to dismiss a charge for being a felon in possession of a firearm, and agreed to withhold filing an § 851 Notice of Enhancement. Woods is presently incarcerated at the Federal Medical Center ("FMC") in Lexington, Kentucky.

18 U.S.C. § 3582(c)(1)(A) permits a court to modify a term of imprisonment and grant what is known as "compassionate release" for extraordinary and compelling reasons. Prior to December 2018, motions for compassionate release could only be made by the Director of Prisons. However, the First Step Act, PL 115- 391, 132 Stat 5194 (Dec. 21, 2018), amended 18 U.S.C. § 3582(c)(1)(A) to allow defendants to bring such motions on their own behalf "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

Woods has provided a copy of a Response to Inmate Correspondence from Warden Wade K. Thompson dated March 24, 2021 responding to Woods's March 18, 2021 request for compassionate release (DN 44-2). As the Warden responded within thirty days of receipt of his request, Woods was required to follow through on the appeals process before applying to this Court for relief. *United States v. Alam*, No. 20-1298, 2020 WL 2845694, *2 (June 2, 2020)("For a prisoner to take his [compassionate release] claim to court, "he must 'fully exhaust[ ] all administrative rights to appeal' with the prison or wait 30 days after his first request to the

prison."). While Woods states that he "submitted an appeal request on April 5, 2021, there is no documentation supporting this assertion.

The problem here is that Woods received a response, but no further evidence of attempts to exhaust are apparent, despite that avenue being fully available to him. Thus, he never "fully exhausted his administrative rights" as required by 18 U.S.C. § 3582(c)(1)(A), a prerequisite before a defendant may seek compassionate relief from the Court. While § 3582(c)(1)(A) provides that "after the lapse of thirty (30) days since the warden's receipt of a request to move on defendant's behalf for a sentence reduction," the defendant may file his motion for compassionate release directly with the Court, we find that Woods should not be permitted to capitalize on this delay and bypass the appeal process. Rather than pursue an appeal, he filed his motion with this Court on day 31 after filing his initial request with the warden.

After considering various opinions addressing the exhaustion provisions of the First Step Act, the Court concludes that the thirty-day exception to the exhaustion requirement was not designed to provide a "gotcha" mechanism when a response is actually received within the thirty day period and the defendant has an available avenue to fully exhaust his rights. Rather, the "lapse of 30 days" provision was designed to address cases in which no prompt response is forthcoming from the BOP and a defendant is left in limbo awaiting agency action. The statute tries to strike a reasonable balance between affording the BOP time to address the request, initially and on appeal, before there is review by the courts and ensuring there is no undue delay in the agency process. A defendant is thus deemed to have exhausted and may file his motion with the Court without waiting further for a BOP response after a lapse of thirty days from the date of his request to the warden.

The "lapse of 30 days" language has been variously interpreted as a "lapse of time" provision or a "futility" provision.

Under the "lapse of time" interpretation, once thirty days passes from the warden's receipt of a defendant's request for compassionate release, the defendant may petition the federal court for relief whether or not the warden has responded within the thirty-day period. The "lapse of time" is viewed simply as a waiting period before judicial relief may be sought.

This interpretation would completely emasculate the requirement of full exhaustion of all administrative rights. Higher level review by the BOP by way of administrative appeal would be rendered entirely optional. "Preventing prisoners from charging straight to federal court serves important purposes." *United States v. Alam*, 960 F.3d 831, 835 (6th Cir. 2020). The BOP is uniquely positioned to assess prisoners' mental and physical health and potential risk to the public if released, and whether extraordinary and compelling reasons exist for compassionate release. *See United States v. Haas*, Civ. No. 6:17-cr-00037-GFVT-HAI-1, 2020 WL 4593206 (E.D.Ky. Aug. 7, 2020)' *citing United States v. Zuckerman*, No. 16 CR 194 (AT), 2020 WL 1659880, at *3 (S.D.N.Y. Apr. 3, 2020); *Alam*, 960 F.3d at 834.

Indeed, in enacting the First Step Act, Congress sought to enhance the effectiveness of the BOP's compassionate release review scheme, not replace it. *See United States v. Smith*, No. 4:95-CR-00019-LPR-4, 2020 WL 2487277 (E.D.Ark. May 14, 2020); *United States v. Ng Lap Seng*, 459 F.Supp.3d 527, 536 (S.D.N.Y. Mar. 15, 2021)("If Congress desired to so fundamentally change the compassionate release process by circumventing the BOP's full administrative review, Congress could have used clearer language, as it did elsewhere in the First Step Act.").

Reading the "lapse of 30 days" language as a "futility" provision satisfies the apparent dual objectives of Congress to respect the BOP's process while ensuring expeditious and expanded access to the Courts for defendants.

In *Haas, supra,*, the district court explained that § 3582(c)(1)(A) requires the defendant to "fully exhaust all administrative rights" and where the BOP responds to the defendant's request within thirty days, the defendant is required to see the appeals process through and the "lapse of 30 days" provision has no bearing on the case. *Haas, supra.,* at *5. The court noted, however, that the Sixth Circuit has yet to specifically address whether a defendant must fully exhaust his appeals when he receives a response from the BOP within the thirty-day window. *Id.* Concluding that a reading of the "lapse of 30 days" language as a "futility" provision led to a logical result, the district court in *Haas* found that full exhaustion of the administrative process was required and held that Haas had failed to exhaust his administrative remedies.

Under a "futility" theory, where the defendant has been afforded an avenue for appeal, he is required to pursue it before seeking relief in federal court and the "lapse of 30 days" provision is ineffective to alter that obligation. Under a "passage of time" interpretation, however, the receipt of a response would not compel Woods to appeal, though the process is made available to him. The Court finds this outcome to be inconsistent with Congressional intent, especially in this instance where time clearly was not of the essence for Woods. Woods did not file his motion for compassionate relief until five months after receipt of the Warden's denial. We do not read the statute to render appeals optional, as such reading would render the exhaustion language superfluous. This Court would therefore follow the "futility" interpretation of the statutory 30-day language and find that Woods failed to exhaust administrative remedies.

In any event, Woods did attempt to exhaust by filing his request with the warden and filing with the Court after thirty days had elapsed. While we disagree with any rationale that he can claim to have fully exhausted, there is apparently room for a difference of opinion on this point. In *United States v. Bolze*, No. 3:09-CR-093-TAV-CCS-1, 2020 WL 6151561 (E.D.Tenn. Oct. 20, 2020), the district court noted that "reasonable minds may disagree as to whether a motion automatically ripens after the passage of thirty (30) days from a defendant's request to the warden." *Id.* at *4. The court stated that "although the Sixth Circuit has yet to encounter the issue presented here, it implied it would read § 3582(c)(1)(A) to allow a defendant to file a motion after thirty (30) days had passed from the filing of a request with the warden, regardless of whether the warden had responded and regardless of the appeal status of a denial by the warden," *quoting Alam*, 960 F.3d at 834. Additionally, as the United States has accepted the lapse of thirty days as sufficient for exhaustion and conceded the point, we will assume, for purposes of this opinion, that Woods satisfied the exhaustion requirement of the First Step Act and will address the substance of his motion. *See Hamer v. Neighborhood Hous. Servs.*, 138 S. Ct. 13, 17 (2017) ("If properly invoked, mandatory claim-processing rules must be enforced, but they may be waived or forfeited."); *United States v. Alam*, 960 F.3d 831, 833–34 (6th Cir. 2020).

Woods' motion for compassionate release will be denied for the following substantive reasons.

Under § 3582(c)(1)(A), a court may reduce a defendant's sentence if it finds that "extraordinary and compelling circumstances warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The court must also consider the "[sentencing] factors set forth in section 3553(a) to the extent they are applicable." § 3582(c)(1)(A).

Congress tasked the Sentencing Commission that, "in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of Title 18, [it] shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). In the Commentary to U.S.S.G. § 1B1.3, the Commission described four circumstances which constitute extraordinary and compelling reasons for sentence reduction:

**(A) Medical Condition of the Defendant.--**

**(i)** The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

**(ii)** The defendant is--

**(I)** suffering from a serious physical or medical condition,

**(II)** suffering from a serious functional or cognitive impairment, or

**(III)** experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

**(B) Age of the Defendant.--**The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

**(C) Family Circumstances.--**

**(i)** The death or incapacitation of the caregiver of the defendant's minor child or minor children.

**(ii)** The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

**(D) Other Reasons.**--As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

By its own terms, § 1B1.13 applies only "[u]pon motion of the Director of the Bureau of Prisons." This policy statement has not been updated to reflect that defendants may now move the court for compassionate release. The United States Court of Appeals for the Sixth Circuit recently found that "§ 1B1.13 is not an 'applicable policy statement' for *defendant-filed* motions for compassionate release," (*United States v. Tomes*, 990 F.3d 500 (6th Cir. 2021) *citing United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021), and thus it does not constrain the court's analysis of what constitutes extraordinary and compelling reasons for release. *Id.* We may turn to U.S.S.G. § 1B1.13, however, for "helpful guidance" in ascertaining whether extraordinary and compelling reasons exist in a given case that may warrant a sentence reduction. We acknowledge while so doing, however, that this Court is free to define "extraordinary and compelling reasons" on our own initiative. *See Tomes*, 990 F.3d at 503; *Elias*, 984 F.3d at 519-520.

In his motion, Woods, 39 years old, describes a number of health conditions and his fear of contracting COVID-19. DN 44. This is the sole ground for the assertion of "extraordinary and compelling" circumstances warranting compassionate release. "[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release…" *United States v. Elias*, 984 F.3d. 516, 521 (6th Cir. 2021), *citing United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

We note first that on February 22, 2021 Woods was diagnosed with Atrial Fibrillation with Rapid Ventricular Response, after having been taken to the University of Kentucky Hospital emergency room with chest pains. He was released the same day and returned to FMC Lexington

in "stable condition with no complaints" and was prescribed metropolol for the condition. (DN 50, p. 15). The note documenting his follow-up visit in the prison clinic on February 23, 2021 states: "Today the patient states he fells better but states 'I ain't 100% though'. The patient admits he has not picked up his medication yet today." (DN 50, p. 11). He was instructed to follow up at sick call or chronic care clinic as needed, and was counseled to avoid caffeine, chocolate, stimulants, and alcohol to reduce risk of atrial fibrillation episodes. (DN 50, pp. 12-13). Woods' condition appears to be well-controlled with medication as the medical records through April 2021 do not evidence any further cardiac episodes or complaints. While his condition is controlled with medication, there is no indication that this 39-year-old man is restricted in his activities or otherwise limited by his current health issues. Woods notes that he was a smoker for 20 years, however, Woods has not asserted and the medical records do not evidence any symptoms of illness or any diagnosis of a condition associated with his history of smoking. Additionally, the mass which was seen on his tonsil has not been identified as anything problematic to date (see ENT consult note of 12/14/2020, DN 50, p. 25), and there are no symptoms or complaints reported. There is no indication that the monitoring is anything more than a precautionary measure.

Woods' current health concerns alone do not rise to the level of an extraordinary and compelling reason for compassionate release, nor does Woods so argue. Rather, Woods's sole contention is that his atrial fibrillation coupled with a high body mass index, being a smoker for many years, and having a 2.5 x 1.5 cm tonsillar mass places him at greater risk for serious illness or death should he contract COVID-19. According to the Centers for Disease Control and Prevention ("CDC"), cardiomyopathies such as atrial fibrillation and obesity "can make [adult individuals with these conditions] more likely to get severely ill from COVID-19." CDC, *People*

*with Certain Medical Conditions* (last visited June 23, 2021). However, with respect to Woods' concern that he faces the potential for infection with the COVID-19 virus in the facility, we note that as of this writing, the Bureau of Prisons website (https://www.bop.gov) reports no cases of COVID-19 at FMC Lexington, and this has been the case for many weeks now. Further, 783 of 961 inmates and 321 staff members have received the COVID-19 vaccine. Thus, while Woods himself declined to receive the vaccine, those with whom he must come in contact are taking steps to prevent any further occurrence of the coronavirus in the prison. As his health concerns are bound up with the risk of contracting COVID-19 at FMC Lexington, the fact that the possibility has been rendered highly unlikely militates against a finding of an extraordinary and compelling reason for compassionate release. *See United States v. McIlveen*, No. 4:15-cr-00403, 2021 WL 2463847 N.D.Ohio June 17, 2021) *citing United States v. Carr*, No. 20-5784, 2020 U.S. App. LEXIS 33773, at *5 (6th Cir. Oct. 26, 2020) (citing "that the existence of Covid-19 and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release") (other citations and quotes omitted)).

The United States would have the Court follow a number of decisions from other jurisdictions and find that Woods' refusal of the COVID-19 vaccine renders his motion for compassionate release a non-starter. *See, ie. United States v. Jackson*, 2021 U.S. Dist. LEXIS 39807 at *4 (D. Minn. Mar. 3, 2021) (Magnuson, J.) ("Jackson's decision to refuse the vaccine flies in the face of any medical recommendation regarding the vaccines. While he is within his rights to refuse any treatment he wishes to forego, he cannot simultaneously claim that he must be released because of the risk of complications while refusing a vaccine that could virtually eliminate that risk.") The United States Court of Appeals for the Sixth Circuit has not directly addressed the implications of an inmate's refusal of the vaccine, although it did recently find in

11

an unpublished decision that there was no abuse of discretion in a district court's conclusion that a defendant who "failed to utilize the services and tools to assist his health" undermined his claim of extraordinary and compelling reasons for early release, even in light of the COVID-19 pandemic. *United States v. Taylor*, No. 20-4241, 2021 WL 2182320, *2 (6th Cir. May 28, 2021)(defendant was obese with high blood pressure and non-compliant with medication and weight loss guidance). This Court declines to take such a hard line, but instead notes that Woods' decision to decline the vaccine, while perfectly within his right, was a personal decision not to further mitigate the already very significantly reduced risk of complications from contracting COVID-19. Thus his fear is partially of his own volition.

Based on Woods' current stable health, continual medical monitoring, the high percentage of vaccinations taken by inmates and staff and the complete absence of cases of COVID-19 presently at FMC Lexington, the Court concludes that Woods has failed to establish an extraordinary and compelling reason warranting compassionate release under 18 U.S.C. §3582(c)(1)(A)(i).

Additionally, even if we found that Woods' medical conditions combined with a COVID-19 exposure risk constituted an extraordinary and compelling reason, compassionate release is appropriate only after consideration of the factors set forth in 18 U.S.C. §3553(a) and where the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 4142(g).

The United States urges under §3553(a)(1), that the nature and circumstances of Woods's crime weigh against release as he poses a very real danger if released from custody.

The present conviction resulted from Woods' delivery of just under one kilogram of cocaine to an informant. A subsequent search of two residences yielded more cocaine, a firearm,

ammunition, and drug trafficking paraphernalia. Woods committed this offense while he was on probation with the Floyd County, Indiana, Circuit Court. Woods' criminal history began at the age of 10. Incidents as a juvenile included numerous acts of violence, as well as theft of a vehicle at the age of 12, possession of a handgun by and a minor at the age of 15. Adult convictions for drug trafficking began at the age of 16, with Woods amassing four prior felony convictions for trafficking cocaine, with another felony trafficking charge pending in the Jefferson County, Kentucky, Circuit Court at the time the presentence report was compiled for sentencing in this case. He was convicted at the age of 21 on eight counts of felony wanton endangerment involving assault and the discharge of a firearm. The defendant notes that this was his last conviction for a violent crime, although pending charges at the time of the report included cocaine trafficking, a charge of felon in possession of a handgun, resisting arrest, and 3rd degree assault alleged to have occurred in 2011 when Woods was 29. Woods served a number of significant prison sentences, yet each time he was released, he violated his parole. Despite repeated convictions for drug trafficking, he returned to trafficking in cocaine. The United States has indicated that Woods' PATTERN score identifies Woods as a high risk for recidivism. The Court finds that the nature and circumstances of the offense as well as these aspects of the defendant's history and characteristics would militate against a sentence reduction, as the danger posed to the community appears great.

Woods contends that his issues stemmed from a cocaine addiction which he has addressed through the RDAP program while serving this sentence. The Court has not been provided any documentation that Woods has successfully completed the program, but Woods represents that his participation has resulted in a new projected release date of August 6, 2022, with a home detention eligibility date of February 6, 2022 which we have no reason to doubt. DN 44, p. 1. He contends

that as he is so close to his release date, "the request [to reduce his sentence to time served] would only accelerate *any potential* community risk by a few months." DN 44, p. 5 (emphasis in original). Woods indicates that he has taken parenting classes and 350 hours of vocational training in carpentry and he has had no disciplinary infractions in prison. He contends that "having served such a lengthy sentence, [he] will be highly motivated to comply with the conditions of his release…In addition, the Court can craft whatever conditions it believes are necessary to mitigate any potential danger [he] may pose…" *Id.*

The argument is, at this juncture, merely an academic one, as there is no extraordinary and compelling reason for compassionate release. Were there an extraordinary and compelling reason, however, the Court would need to weigh the minimal time remaining on Woods' sentence, his drug treatment, and the conditions and terms of a proposed release plan against the assessment of a high likelihood that Woods may recidivate in determining whether Woods poses a danger to the community such that compassionate release should be denied. We need not make a conjectural determination. Additionally, the Court is not in possession of sufficient information to make such a determination.

In imposing sentence, the § 3553(a) sentencing factors were thoroughly and carefully considered, including, among other things, the nature of the conduct for which Woods pleaded guilty – trafficking in cocaine. As already noted, Woods had a substantial prior criminal history. The fact that he was on conditional release at the time he committed the crime in this case evidences a complete disregard for the sanctity of the law. This Court is not persuaded that Woods's good conduct in prison necessarily represents a new respect for the legal system. Considering the seriousness of the crime and Woods's history and characteristics, the Court found that a sentence of 140 months imprisonment, as agreed to by plea agreement, was sufficient but not

greater than necessary to promote respect for the law, to reflect the seriousness of the offense, to deter future criminal conduct, to protect the public, and to serve as just punishment for the offense. The Court has revisited these factors and finds nothing to call into question the initial determination of the appropriate sentence, however, if faced with an extraordinary and compelling reason for compassionate release, the Court would revisit the § 3553(a) factors in light of the time now served, his drug treatment and good comportment in prison. But this case begins and ends with the Court's finding that there is no extraordinary and compelling reason for compassionate release. Therefore, the Court finds no ground to justify a reduction in Woods' sentence, and the motion will be denied.

Motion having been made and for the reasons set forth herein and the court being otherwise sufficiently advised, **IT IS HEREBY ORDERED AND ADJUDGED** that the motion of the defendant, Jerome D. Woods, for compassionate release (DNs 44, 46) is **DENIED.** The motion of the United States to file records under seal (DN 49) is **GRANTED**. The motion of the United States for leave to file its brief out-of-time (DN 47) is **GRANTED.**

**IT IS SO ORDERED.**

June 25, 2021

Charles R. Simpson III, Senior Judge
United States District Court

cc: Counsel of Record